1  RICHARD J. NELSON (State Bar No. 141658)
   E-Mail:      *rnelson@sideman.com*
2  MICHAEL H. HEWITT (State Bar No. 309691)
   E-Mail:      *mhewitt@sideman.com*
3  ARTUR A. MINASYAN (State Bar No. 322248)
   E-Mail:      *aminasyan@sideman.com*
4  SIDEMAN & BANCROFT LLP
5  One Embarcadero Center, Twenty-Second Floor
   San Francisco, California 94111-3711
6  Telephone:   (415) 392-1960
   Facsimile:   (415) 392-0827
7

8  Attorneys for
   HEWLETT PACKARD ENTERPRISE COMPANY,
9  HEWLETT PACKARD ENTERPRISE DEVELOPMENT LP and
   HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.
10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13
   HEWLETT PACKARD ENTERPRISE          Case No. 3:20-cv-5447
14 COMPANY, a Delaware corporation;
   HEWLETT PACKARD ENTERPRISE          **COMPLAINT FOR DAMAGES AND**
15 DEVELOPMENT LP, a Delaware          **INJUNCTIVE RELIEF**
   corporation; and HEWLETT-PACKARD
16 DEVELOPMENT COMPANY, L.P., a Texas  **1. TRADEMARK INFRINGEMENT, 15**
   limited partnership,                **U.S.C. § 1114(1)(a);**
17
                                       **2. TRADEMARK COUNTERFEITING, 15**
18            Plaintiffs,              **U.S.C. § 1114(1)(b);**

19       v.                           **3. FEDERAL UNFAIR**
                                       **COMPETITION/FALSE ADVERTISING,**
20 ADVANCED DIGITAL SOLUTIONS          **15 U.S.C. § 1125(a);**
   INTERNATIONAL, INC., a California
21 corporation, SHAHID SHEIKH, an individual,  **4. FEDERAL TRADEMARK DILUTION,**
   and FARHAAD SHEIKH, an individual,  **15 U.S.C. § 1125(c);**
22
                                       **5. MISLEADING AND DECEPTIVE**
23            Defendants.             **ADVERTISING, CAL. BUS. & PROF.**
                                       **CODE § 17500;**
24
                                       **6. UNJUST ENRICHMENT**
25
                                       **7. UNFAIR COMPETITION, CAL. BUS. &**
26                                     **PROF. CODE § 17200**

                                       **8.  BREACH OF CONTRACT**
27
                                       **DEMAND FOR JURY TRIAL**
28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Plaintiffs Hewlett Packard Enterprise Company ("HPE"), Hewlett Packard Enterprise

2    Development LP ("HPED"), and Hewlett-Packard Development Company, L.P. ("HPDC," and

3    together with HPE and HPED, "Plaintiffs") allege against Advanced Digital Solutions

4    International, Inc. ("ADSI"), Shahid Sheikh, and Farhaad Sheikh, as follows:

5    **I.      INTRODUCTION**

6        1.      As set forth in detail below, Defendants have engaged in a scheme to market and

7    distribute counterfeit HPE products, bearing Plaintiff HPDC's and HPED's marks ("Infringing

8    Products"), through transactions on Defendants' respective online storefronts, and through other

9    distribution channels, thereby directly harming Plaintiffs, Plaintiffs' brands, and Plaintiffs'

10   established reputation for producing the highest quality networking communications and

11   information technology products and services.

12       2.      Plaintiffs' customers have come to rely on Plaintiffs' sophisticated networking

13   products to run critical and highly secured networks supporting sensitive infrastructure throughout

14   the world, including throughout the United States. Counterfeit products can cause privacy and

15   security vulnerabilities, data loss, network downtime and substantial business interruption.

16   Plaintiffs seek to hold Defendants accountable for the mass infringement and counterfeiting, and

17   related unfair competition arising from Defendants' sales of the Infringing Products, and to protect

18   Plaintiffs' supply chain and distribution infrastructure, and brand.

19   **II.     THE PARTIES**

20       3.      Prior to April 2019, HPE, a Delaware corporation, maintained its principal place of

21   business at 3000 Hanover Street, Palo Alto, CA 94304. In April 2019, HPE relocated its principal

22   place of business to 6280 America Center Drive, San Jose, CA 95002. At all times mentioned

23   herein, HPE had its principal place of business in the Northern District of California.

24       4.      HPED is, and at all times mentioned herein was, a Texas limited partnership with

25   its principal place of business at 11445 Compaq Center Drive West, Houston, Texas 77070.

26   HPED has an exclusive license to use, sub-license, and enforce trademarks that are the subject of

27   this action.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

5.      HPDC is a Texas limited partnership with its current principal place of business at 10300 Energy Drive, Spring, Texas 77389. Prior to January 2019, HPDC had its principal place of business at 11445 Compaq Center Drive West, Houston, Texas 77070.  HPDC has an exclusive license to use, sub-license, and enforce trademarks that are the subject of this action.

6.      On information and belief, Defendant Advanced Digital Solutions International, Inc., is a California corporation with its principal place of business at 4255 Business Center Drive, Fremont, California.

7.      On information and belief, Defendant Shahid Sheikh is an individual residing at 1365 Lawrence Road, Danville, California 94506.  On information and belief, Shahid Sheikh owns ADSI with his wife, and was the CEO until January 2019.  Following January 1, 2019, Shahid Sheikh remained active with ADSI with the title of President.

8.      On information and belief, Defendant Farhaad Sheikh (also known as "Freddy") is an individual residing at 1365 Lawrence Road, Danville, California 94506.  On information and belief, Farhaad Sheikh is the Chief Executive Officer of Defendant ADSI since at least January 2019.  Farhaad is Shahid's son.

9.      Plaintiffs are informed and believe, and thereon allege, that Defendants undertook obligations or rights arising out of the subject events and happenings herein referred to, engaged in actions of omissions, either intentional or negligent, regarding the subject events and happenings herein referred to, and/or benefitted unjustly from the efforts, works, and goods of HPE.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs who, therefore, sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to reflect the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained.

11.     At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego or surety of the other Defendants and was acting within the scope of that

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  agency, employment, partnership, venture, or suretyship with the knowledge and consent or

2  ratification of each of the other Defendants in doing the things alleged in this Complaint.

3  **III.     JURISDICTION**

4       12.     This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051

5  *et seq.* (the "Lanham Act"), and related causes of action. This Court has original subject matter

6  jurisdiction over this Action pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as

7  well as under 28 U.S.C. §§ 1331 and 1338(a) and (b).

8       13.     This Court has supplemental subject matter jurisdiction over the pendent state law

9  claims under 28 U.S.C. § 1367, because these claims are so related to Plaintiffs' claims under

10  federal law that they form part of the same case or controversy and derive from a common nucleus

11  of operative facts.

12       14.     This Court has personal jurisdiction over Defendants, who each reside in this

13  district, have engaged in business activities in this district, misled consumers in this district, and

14  knowingly and purposefully directed business activities at this district.

15       15.     Plaintiffs are informed and believe, and thereon allege, that ADSI is doing business

16  in the State of California, and/or participated in or undertook obligations or rights arising out of

17  the subject events and happenings herein referred to, engaged in actions or omissions, either

18  intentional or negligent, regarding the subject events and happenings referred to, and/or benefited

19  unjustly from the efforts, work, and goods of HPE.

20  **IV.     VENUE AND INTRA-DISTRICT ASSIGNMENT**

21       16.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial

22  part of the property that is the subject of the action is situated in this district. Venue is also proper

23  because Defendants are each subject to personal jurisdiction in this district.

24  **V.     FACTUAL ALLEGATIONS RELEVANT TO PLAINTIFFS, THEIR
25         INTELLECTUAL PROPERTY, AND DEFENDANTS' UNLAWFUL SCHEME**

26       **A.     Plaintiffs' Business and History**

27       17.     Hewlett-Packard Company ("Hewlett-Packard") was founded in 1939 by engineers

28  David Packard and Bill Hewlett, who began business by designing and building electronic test

equipment from a garage in Palo Alto, California.  Hewlett-Packard became an innovator in its field, developing technologies and inventing new products, growing to become one of the world's largest information technology companies.  Hewlett-Packard specialized in developing and manufacturing personal computers and printers, as well as enterprise hardware products and services, including support services and enterprise software.  In late 2015, Hewlett-Packard split into HP Inc. (specializing in the manufacture of personal computers, printers and printer cartridges) and HPE (specializing in the manufacture of enterprise IT hardware, as well as the creation and distribution of enterprise software and support services).

18.    Much like Hewlett-Packard, HPE is a multinational enterprise company that delivers industry leading, high-quality information and technology products, consulting, and support services to its large and diverse customer base, including governments, large enterprises, and small to medium-sized businesses.    Among other areas, HPE's business includes telecommunications networking hardware products and solutions, small to enterprise level data storage products and solutions, data center configuration and installation products and services, as well as various enterprise and information and technology management software solutions.

19.    Hewlett-Packard (and now HP Inc.) invested substantial effort and resources to develop and promote public recognition of the "HP"-related marks.  These trademarks are owned by HP Hewlett Packard Group LLC ("TM JV"), which has conveyed an exclusive license to use and enforce the HP and HP Logo trademarks to HPDC.  In turn, HPDC granted a temporary transitional use license to Hewlett Packard Enterprise Development LP ("HPED"), an HPE subsidiary which holds title to intellectual property for HPE, so that HPE could use the HP and HP Logo trademarks during a phase-out period, until full implementation of the new HPE trademarks. During this phase-out period, the HP Marks on HPE products signify to the public that the products are high quality, genuine, HPE products. The use of the HP Marks by counterfeiters is intended to trade on the famous status and wide-spread recognition of the HP Marks on HPE products, and will likely continue after the phase-out period, to signal falsely that the products are high-quality, genuine, HPE products, when in reality, they are not. HPE and HP Inc. have used the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    HP Marks to identify goods and services as being genuine products, and the HP Marks are well-

2    recognized signifiers of high quality products and services.

3          20.     Hewlett-Packard, HPDC and TM JV have caused several trademarks to be

4    registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a

5    range of telecommunications, computer hardware and software products and services, and TM JV

6    owns all rights, title, and interest in numerous federal trademark registrations (collectively, the

7    "HP Marks").  The HP Marks include, but are not limited to, the following:

| Mark | Registration Number | Registration Date |
|------|--------------------|-------------------|
| HP | 1,840,215 | June 21, 1994 |

10          21.     The TM JV also owns several "HPE"-related marks such as the HEWLETT

11    PACKARD, HEWLETT PACKARD ENTERPRISE, and HPE word marks, and the related design

12    marks, and has granted HPED an exclusive license to use and enforce those certain marks.  HPED

13    also owns several of the marks separate and apart from the TM JV, and, together, with the marks

14    owned by the TM JV (collectively, "HPE Marks"), continue to build on the legacy of the world-

15    famous HEWLETT-PACKARD mark, which was used since at least as early as 1941 in close

16    connection with the internationally well-known HP Marks by predecessor Hewlett-Packard, to

17    distinguish and signal the "HP" authorized products and services through a wide variety of media

18    including television, radio, newspapers, magazines, billboards, and web sites.  Through their close

19    connection, the public has come to associate the HPE Marks as having a common legacy with the

20    HP Marks.  HPED and the TM JV have caused several of these HPE Marks to be registered on the

21    Principal Register of the USPTO in connection with a range of telecommunications, computer

22    hardware and software products and services.  These registered HPE Marks include, but are not

23    limited to the following:

| Mark | Registration Number | Registration Date |
|------|--------------------|-------------------|
| HEWLETT PACKARD ENTERPRISE | 5,209,743 | May 23, 2017 |
| HEWLETT PACKARD | 5,209,742 | May 23, 2017 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

22.     The HP and HPE Marks (collectively, the "TM JV Marks") are distinctive source identifiers and have been used in interstate commerce to identify and distinguish Plaintiffs' high quality products and services dating back to 1941.

23.     For over 75 years, the TM JV Marks have served to distinguish and signal Plaintiffs' authorized products and services through a wide variety of media including television, radio, newspapers, magazines, billboards, and web sites.

24.     Also as a result of Hewlett-Packard and now HP Inc.'s and HPE's extensive advertising and promotional efforts and the continuous use of the HP Marks by HP Inc. and/or HPE for over 75 years, the marks have attained one of the highest levels of brand recognition.

25.     The HP and HPE Marks are unquestionably famous both commercially and as defined by 15 U.S.C. Section 1125(c)(1), and became famous long before the infringing and counterfeit activity alleged herein.

26.     As a result of the longstanding and widespread use and promotion of the HP Marks, HP Inc.'s and HPE's customers worldwide have come to rely upon the HP Marks to identify high-quality goods and services.

27.     Many of HPE's products are purchased by the U.S. Government, the military, and by other industries, in critical and life-essential applications.  Counterfeit HPE products jeopardize the systems into which they are placed because they do not conform to HPE's design, specifications, production standards, or quality control, and thus lack reliability.  Counterfeit products that bear markings similar to, or substantially indistinguishable from, the TM JV Marks provide customers with a false assurance that the products they have purchased are reliable and conform to HPE's high standards and that they are eligible for certain warranties.  When counterfeit products fail, the purchasers can suffer critical losses to their business, infrastructure, and security.

**B.     Counterfeit And Otherwise Materially Different "HP" and "HPE" Products**

28.     Counterfeit products that bear markings similar to the TM JV Marks provide customers with a false assurance that the products they have purchased (1) are reliable and conform with HPE's high standards, (2) come with applicable warranties, and (3) come with all of

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  the necessary accessories sold with the product that have been selected and approved by HPE for
2  use with the product.

3      29.    In addition to harm to customers, the sale of counterfeit HPE products also harms
4  Plaintiffs in many ways. Among these, counterfeit HPE products which fail or degrade create the
5  false impression that HPE products are unreliable, thereby improperly tarnishing HPE's reputation
6  and causing HPE to suffer lost sales and future business opportunities. When customers purchase
7  HP- or HPE-branded parts that are counterfeit and unreliable, their image of HPE is diminished
8  and HPE's opportunity to sell genuine, high-quality products to those customers may be lost
9  forever. As a result, Plaintiffs suffer substantial and irreparable harm to their brand, image,
10  business, and goodwill with the public. HPE also suffers lost sales when customers purchase
11  counterfeit products instead of genuine HPE products.

12      **C.**      **HPE's Sales and Distribution Channels**

13      30.    HPE's product serial numbers allow HPE to maintain quality control and product
14  traceability for warranty, service and other business purposes.  Specifically, an HPE product serial
15  number is typically married to or associated with a myriad of product-related components or
16  attributes, i.e., product SKU, sales order number, package ID number, manufacturer model
17  number, and most relevant in this Action, warranty entitlement.

18      31.    HPE sells the majority of its products through Distributors and "authorized
19  Partners," rather than directly to end user consumers.  The majority of HPE's sales flow from HPE
20  through its "Tier 1 Distributors" to its "Tier 2 Partners," and then to its end users.  HPE also sells a
21  smaller percentage of its products directly to its largest customers and to certain Tier 2 Partners.

22      32.    HPE has four Tier 1 Distributors in the United States:  Synnex, Ingram Micro, Tech
23  Data, and Arrow Electronics. There are also about 35,000 Tier 2 Partners in the country.  To
24  become a Tier 2 Partner, an entity must meet an established set of business criteria, and provide
25  HPE with detailed information about its business, including documentation confirming the
26  business' state registration or incorporation, business partnership or operating agreements, the
27  names of the officers who are authorized to sign documents for the business, and the business' tax
28  identification number.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

**D.      ADSI Becomes An HPE Partner**

2      33.      In 2009, ADSI became an HP Partner.  When HP and HPE split in 2015, ADSI

3  continued as an HPE Partner and agreed to the terms of the Hewlett Packard Enterprise Company

4  U.S. Partner Agreement.  It renewed its partnership status through 2018.

5      34.      Among the terms that ADSI agreed to abide by were the following:

6      • ADSI was not authorized to modify HPE products.   (Paragraph 7.b.)
         Specifically, the agreement states:

7

8            *"You are not authorized to modify HPE Products. We are not*
             *liable for any issue arising from such unauthorized*
9            *modifications, or for any commitment(s) you make with respect to*
             *special interfacing, compatibility or suitability of Product(s) and*
10           *Support for specific applications."*

11     • ADSI agreed to display HPE's marks only to promote the sale of HPE
         Products (Paragraph 8.b.) and to only display the HPE Marks in good taste,
12       and in a manner that preserves the value of the Marks (Paragraph 8.c).
         Specifically, the agreement states that:
13

14           *"[HPE] may allow you to use HPE Marks only to promote the*
             *sale of HPE Products and Support under this Agreement,"* and
15           *"[t]he parties agree to display each other's Marks in good taste,*
             *in a manner that preserves their value as each other's Marks,*
16           *and in accordance with any standards provided by the other*
             *party for display."*
17

18     • ADSI agreed to abide by HPE's Partner Code of Conduct, and to conduct
         business with "strict legal compliance and with the highest ethical
19       standards." (Paragraph 16.c.)   Specifically, the Code of Conduct provides
         that:
20

21           *"HPE expects all partners to conduct business in strict legal*
             *compliance and with the highest ethical standards. By signing*
22           *this Agreement, you agree to comply with HPE's Partner Code of*
             *Conduct, as updated from time to time, and located on the HPE*
23           *Partner Portal. Additionally, you acknowledge that there are*
             *specific legal and ethical requirements for doing business with*
24           *public sector entities and you are solely responsible for your*
             *compliance with these requirements. Specifically, you agree*
25           *(without limitation):*

26
27           *(1) not to seek or accept any compensation in connection with*
             *this Agreement which may violate any applicable laws,*
28           *regulations, contracts, or conflict of interest policies; (2) not to*

*use bribes, kickbacks, illegal gratuities, or other corrupt practices in connection with this Agreement; and (3) not to provide HPE with any proprietary, source selection sensitive, or other information that is restricted from disclosure by a third party. A breach of HPE's Partner Code of Conduct may be deemed a material breach of this Agreement. Without limiting HPE's rights under section 15, if you breach HPE's Partner Code of Conduct, HPE may exclude you from HPE's channel programs, including special pricing and/or promotion programs and, if you are eligible to purchase Products directly from HPE, HPE may alter the level of discount available for such purchases."*

35.     Attached to ADSI's Partner Agreement is also an HPE U.S. Partner Roles and Responsibilities Addendum, which required ADSI to purchase all HPE Products "only from Distributors listed on the U.S. Distributor Summary Matrix on the HPE Partner Portal," and required ADSI to not purchase HPE products from other Partners or from any unauthorized source. Specifically, the HPE U.S. Partner Roles and Responsibilities Addendum states:

*"1.  Purchasing*

    *a.  Sourcing*

    *All Products must be purchased for resale purposes only from Distributors listed on the U.S. Distributor Summary Matrix on the HPE Partner Portal. You may not purchase Products for resale purposes from other Partners and/or any unauthorized sources. You may not purchase Products for your internal use.*

    *Direct purchasing relationships with HPE may be established by signing additional Addenda or as specified in additional program terms and conditions.*

    *You may resell Products over the Internet, via an HPE approved URL in the name of your company provided that you implement policies supporting Customer satisfaction as a primary concern; provide presales Customer support; and do not resell Products via an auction.*

    *You may resell Products only via a URL that matches your legal name or d/b/a name. New or additional domain names require HPE approval prior to the posting of Products."*

36.     As described in more detail below, ADSI violated the terms of its Partner Agreement by purchasing products from other HPE Partners and unauthorized sources at cheaper prices than what it could obtain through HPE, and simultaneously representing itself as an HPE Partner, giving the false impression to consumers that it was obtaining HPE products through HPE's authorized distribution channel.

### E.     Evidential Purchase from ADSI in 2018

37.     HPE conducted a test purchase through a licensed investigator of several HPE products from ADSI's online storefront for delivery at the investigator's office located in this district.  On June 28, 2018, HPE's investigator purchased two J4858C transceivers, and one HPE iLO Advanced 1-server three-year support license (BD505A-63101).   The products were advertised as "New" "HP" products, and listed the manufacturer name as "Hewlett-Packard."

38.     On July 6, 2018, HPE's investigator received two separate packages containing the products ordered on ADSI's storefront.   The first package contained the two ProCurve Networking transceivers, bearing the following Serial Numbers:  CN949DN227 & CN847DN073, respectively.



39.     The second package contained a physical license box, bearing the following Serial Number:  PRGKVDTBAL.

40.     On August 8, 2018, an engineer working for HPE analyzed the two transceivers and determined that they were counterfeit.  The engineer determined that the license was genuine.

41.     In April 2019, HPE terminated ADSI as a channel sales partner.

### F.     ADSI's History of Selling Counterfeit Products in the U.S.

42.     According to public court records, ADSI is alleged to have a history of importing and selling counterfeit products.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

43.     For example, in a case filed in this Court by Cisco Systems, Inc. (*Cisco Systems, Inc. et al. v. Zahid "Donny" Hassan Sheikh, et al.*, USDC N.D. Cal., Case No. 4:18-cv-07602-YGR), Cisco alleged that U.S Customs and Border Patrol ("CBP") seized at least 31 separate shipments of counterfeit Cisco products going to ADSI or an affiliated entity between May 2013 and November 2018.  The seized shipments included hundreds of counterfeit transceivers (the same type of product that ADSI sold to the HPE investigator), along with counterfeit labels.  The complaint also alleges that ADSI arranged for UPS boxes in far-away locations—Reno, Nevada and Portland, Oregon—with the knowledge and under the direction of Shahid Sheikh and Farhaad Sheikh, to receive counterfeit products from China, and that employees of ADSI put counterfeit labels on transceivers in the ADSI business office in Fremont, so that ADSI could sell those counterfeit products to federal customers on the GSA platform and to other customers.

### G.     Misleading and False Advertising

44.     ADSI operates a website at www.adsii.com/shop/home.  On ADSI's main webpage, ADSI advertises that it is "featured Partners" with Hewlett Packard Enterprise, among other companies, including Samsung, Bluebeam, and Wasp.  Contrary to this, ADSI is *no longer a member* of HPE's channel of sales organizations, and is not an HPE "partner" or Authorized Reseller.  Nonetheless, ADSI continues to represent that HPE is a "featured partner" on the main splashpage of its storefront.



45.     In   addition,   ADSI   maintains   an   Amazon   storefront   available   at www.amazon.com/sp?seller=A3GQGK8PJ4P79P.   On its main seller page, ADSI continues to represent that it is a "Channel Partner[]" with "hardware manufacturers such as IBM, Hewlett-Packard, Toshiba, Lenovo, ViewSonic, Cisco, … and others."  The claims on ADSI's webpage and on the ADSI page on the Amazon website are false.  ADSI ceased being an HPE channel sales partner in April 2019.  By holding themselves out as an authorized partner, Plaintiffs assert on information and belief that ADSI is attempting to deceive customers such as the US federal government and other sensitive customers of HPE products that it is safe to purchase HPE products from ADSI and that the HPE products sold by ADSI are sourced from HPE or HPE's authorized distributors.



### FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement

### (15 U.S.C. § 1114)

### Against All Defendants

46.     Plaintiffs   incorporate   by   reference   each   of   the   allegations   in   the   preceding paragraphs of this Complaint as though fully set forth herein.

47.     The TM JV Marks are valid, protectable trademarks that have been registered as marks on the principal register in the United States Patent and Trademark Office. Plaintiffs are the owners and registrants of the TM JV Marks.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

48.     As described in more detail above, Defendants have used and counterfeited the TM JV Marks in connection with the marketing, promotion, and sale of their goods and services without Plaintiffs' consent, in a manner that is likely to cause, and has actually caused, confusion and/or mistake, or that has deceived members of the consuming public and/or the trade. Indeed, Defendants' counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit packaging, inferior warranty, and other related commercial activities. As of the filing of this Complaint, Defendants are continuing to infringe the TM JV Marks unabated as alleged further above.

49.     The TM JV Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

50.     Defendants have sold, offered to sell, distributed, and advertised—and continue to sell, offer to sell, manufacture, distribute, and advertise—infringing networking hardware products bearing TM JV Marks.

51.     The differences between Defendants' unauthorized products and Plaintiffs' genuine goods are material, as consumers would consider those differences, alleged further above, to be material to their purchasing decisions.

52.     Defendants' actions have caused, and are likely to continue to cause, confusion, mistake, and deception as to the origin and quality of Defendants' unauthorized products because they are intentionally calculated to mislead the general purchasing public into believing that Defendants' unauthorized products originated from, are associated with, or are otherwise authorized by Plaintiffs.

53.     Upon information and belief, Defendants' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Plaintiffs' exclusive rights to and goodwill in the TM JV Marks, or with willful blindness to the same, and with the intent to cause

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

confusion, to cause mistake and/or to deceive. Accordingly, Defendants' actions constitute willful trademark infringement and counterfeiting of the TM JV Marks in violation of 15 U.S.C. §§ 1114 and 1117.

54.     Defendants' unauthorized use of the TM JV Marks constitutes trademark infringement of the federally registered TM JV Marks and has caused substantial damage to Plaintiffs and to the reputation and goodwill symbolized by the TM JV Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Defendants' unauthorized use of the TM JV Marks was conducted intentionally and with notice and full knowledge that the use was unauthorized by Plaintiffs.

55.     Plaintiffs have been, and continue to be, damaged by Defendants' infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Plaintiffs' consumers and members of the general consuming public and the trade. Plaintiffs are entitled to an injunction against Defendants, and an order of destruction of all infringing products, as well as all monetary relief and other remedies available under the Lanham Act, including but not limited to trebled damages and/or actual profits, reasonable attorney's fees, costs and prejudgment interest, and/or statutory damages.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Counterfeiting

### (15 U.S.C. § 1114)

### Against All Defendants

56.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

57.     The TM JV Marks are valid, protectable trademarks that have been registered as marks on the principal register in the United States Patent and Trademark Office. Plaintiffs are the owners and registrants of the TM JV Marks.

58.     As described in more detail above, Defendants have used and counterfeited the TM JV Marks in connection with the marketing, promotion, and sale of their goods and services without Plaintiffs' consent, in a manner that is likely to cause, and has actually caused, confusion

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

and/or mistake, or that has deceived members of the consuming public and/or the trade. Indeed, Defendants' counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit packaging, inferior warranty, and other related commercial activities. As of the filing of this Complaint, Defendants are continuing to infringe the TM JV Marks unabated as alleged further above.

59. Defendants have publicly advertised, sold, offered to sell, and distributed counterfeit TM JV products in interstate commerce in direct competition with Plaintiffs and without authorization or consent to use the TM JV Marks but with full knowledge of Plaintiffs' notorious prior rights in those marks.

60. Defendants' counterfeit HPE products reproduce, counterfeit, copy, and colorably imitate the TM JV Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the TM JV Marks. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the TM JV Marks to labels, prints, and packages intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of Defendants' counterfeit products, which is likely to cause confusion, to cause mistake, or to deceive.

61. Defendants' unauthorized use of the TM JV Marks on or in connection with Defendants' counterfeit products was conducted intentionally and with notice and full knowledge that the use was unauthorized by Plaintiffs. Accordingly, Defendants' actions constitute willful trademark infringement and counterfeiting of the TM JV Marks in violation of 15 U.S.C. §§ 1114 and 1117.

62. Plaintiffs have been, and continue to be, damaged by Defendants' infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Plaintiffs' consumers and members of the general consuming public and the trade. Plaintiffs are entitled to an injunction against Defendants, and an order of destruction of all infringing products, as well as all monetary relief and other remedies available under the Lanham Act, including but

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   not limited to trebled damages and/or actual profits, reasonable attorney's fees, costs and

2   prejudgment interest, and/or statutory damages.

### THIRD CLAIM FOR RELIEF

### Federal Unfair Competition/False Advertising

### (15 U.S.C. § 1125)

### Against All Defendants

7      63.    Plaintiffs incorporate by reference each of the allegations in the preceding

8   paragraphs of this Complaint as though fully set forth herein.

9      64.    Defendants' resale of infringing products that are designed to appear identical to

10   genuine HPE products and thereby employ the same nature, style, look, and color as genuine HPE

11   products. Moreover, as alleged above, Defendants sell products that have affixed counterfeit or

12   infringing versions or reproductions of the TM JV Marks to unauthorized products and/or to the

13   packaging, wrapping, etc., in which the infringing products are packaged. This unauthorized use of

14   the TM JV Marks is likely to cause confusion, to deceive, and to mislead the consuming public

15   into believing that there is some affiliation, connection, or association between Defendants and

16   Plaintiffs and is likely to cause confusion, mistake, or deception as to the origin, source,

17   sponsorship, authorization, approval, or affiliation of Defendants' unauthorized products.

18      65.    Defendants' actions, including the unauthorized use of the TM JV Marks in

19   commerce, constitute false designation of origin, false or misleading descriptions of fact, and false

20   or misleading representations of fact, which have caused, and are likely to continue to cause,

21   confusion, mistake, and deception, as to Defendants' association or affiliation with Plaintiffs, or

22   lack thereof, as well as to the origin, source, and sponsorship of Defendants' unauthorized

23   products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

24      66.    Defendants, in commercial advertising and promotion, misrepresent the nature,

25   characteristics, qualities, or geographic origin of the HPE products they sold, by falsely

26   advertising that the infringing goods were genuine HPE products and not disclosing that they are

27   not covered by the manufacturer's warranty. The false advertising concerned material information

28   that was likely to influence a consumer's purchasing decision.

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

67.     Defendants' unauthorized and misleading use of the TM JV Marks constitute willful infringement of the TM JV Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Plaintiffs to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

68.     Defendants' actions described above, including its unauthorized and misleading use of the TM JV Marks in commerce have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Plaintiffs and to the business and goodwill represented by the TM JV Marks, thereby leaving Plaintiffs without an adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**Federal Trademark Dilution**

**(15 U.S.C. § 1125(c))**

**Against All Defendants**

69.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

70.     The TM JV Marks are famous and well known throughout the United States, on the basis of Hewlett-Packard's exclusive and extensive use for many years of the TM JV Marks.   By reason of more than 75 years of extensive advertising and use of the TM JV Marks, the TM JV Marks have become highly distinctive of Plaintiffs' goods and are uniquely associated with HPDC, HPED, and HPE.

71.     Defendants' unauthorized commercial use of the TM JV Marks on the counterfeit "HPE" products has diluted and continues to dilute the distinctive quality of the TM JV Marks by lessening their capacity to identify and distinguish HPE, HPDC and HPED exclusively as the sources of goods bearing or provided under the TM JV Marks.

72.     Defendants' commercial use of the TM JV Marks further dilutes the TM JV Marks by associating them with a product of inferior quality, thereby tarnishing the TM JV Marks.  For example, when customers expend money in exchange for HPE products, part of the consideration for which they bargain is the authenticity of the product.  When "HPE" products are advertised as "new" and marked as "HP", "Hewlett Packard Enterprise", or "HPE" but are not in fact produced

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

with HPE's high-quality materials, the customers mistakenly associate the inferior product with Plaintiffs' reputations and quality control over their products

73.     Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the TM JV Marks, and cannot assert any rights in any of the TM JV Marks that are prior to Plaintiffs' first respective uses of the TM JV Marks.

74.     Defendants' conduct, as described in paragraphs 19 through 25 above, dilutes, blurs, and tarnishes the TM JV Marks in a manner that destroys the distinctiveness of the famous TM JV Marks, causing damage to HPDC and HPED, and the business and goodwill represented by the TM JV Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), in an amount to be proven at trial.

75.     Defendants' actions that have diluted the TM JV Marks have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to Plaintiffs, the TM JV Marks, and to the business and goodwill represented by the TM JV Marks, such that Plaintiffs have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF

### California Statutory Misleading and Deceptive Advertising,

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### Against All Defendants

76.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

77.     Defendants have made false and misleading statements about their relationship and/or association with Plaintiffs.

78.     Defendants also misleadingly advertised its HPE products as new, when in actuality the products were counterfeit, as confirmed by Plaintiffs' brand protection engineers, or pre-owned.

79.     Defendants knew that these statements were false or misleading, or with reasonable care, should have known them to be false or misleading.

80.     Defendants' statements have misled, or are likely to mislead, a reasonable consumer into believing that Defendants were selling products as an reseller authorized by Plaintiffs, and that the products sold by Defendants are new, original, and eligible for other services provided for genuine HPE products.

81.     The conduct alleged above constitutes false and misleading advertising, in violation of Section 17500, et seq. of California's Business and Professions Code.

82.     Plaintiffs have suffered loss of money as a result of Defendants' misleading and false advertising. Defendants have, and will continue to cause, irreparable injury to Plaintiffs, including injury to Plaintiffs' reputation and goodwill. Defendants' activities, unless restrained, will continue to cause further irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Common Law)

### Against All Defendants

83.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

84.     Defendants unjustly received benefits at the expense of Plaintiffs through their wrongful conduct, as alleged further above. Defendants continue to unjustly retain these benefits at the expense of Plaintiffs. The unjust receipt of the benefits obtained by Defendants lacks any adequate legal basis and thus cannot conscientiously be retained by Defendants. Therefore, the circumstances of the receipt and retention of such benefits are such that, as between Plaintiffs and Defendants, it is unjust for Defendants to retain any such benefits.

85.     Plaintiffs are therefore entitled to full restitution of all amounts and/or other benefits in which Defendants have been unjustly enriched at Plaintiffs' expense, in an amount to be proven at trial.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**SEVENTH CLAIM FOR RELIEF**

**California Unfair Competition**

**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

**Against All Defendants**

86.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

87.     California Business and Professions Code §§ 17200 *et seq.* prohibits acts of unfair competition, which includes any unlawful business act or practice.

88.     Defendants have knowingly, willfully, and unlawfully infringed the TM JV Marks, including through the sale of infringing HPE networking hardware products in violation of the Lanham Act, 15 U.S.C. § 1114.

89.     As a direct, proximate, and foreseeable result of Defendants' sale of infringing HPE networking hardware parts, Plaintiffs have further been deprived of lost revenue and payments, and have therefore sustained injury in fact.

90.     Defendants' practices were unlawful, and constitute unfair competition as defined by Cal. Bus. & Prof. C. §§ 17200 *et seq.* Defendants' misconduct was unlawful because, as described herein, their misconduct constitutes violations of numerous state and federal statutes, including but not limited to Cal. Civ. Code § 1797.81, conversion, state false advertising laws such as Cal. Bus. Prof. Code § 17500, as well as the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and the Federal Trade Commission Act, 15 U.S.C. § 45. Further, their alleged conduct was unfair in that Defendants' actions, as described herein, significantly threatened and/or harmed competition through infringement, counterfeiting, false advertising, conversion, and circumvention, which undermines Plaintiffs' ability to fairly compete in the marketplace.

91.     As a direct and proximate result of Defendants' unlawful and unfair business practices, Plaintiffs have lost money and property, and have suffered irreparable injury to their brand, business reputation, and goodwill. As such, Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   temporary, preliminary, and permanent injunctive relief against Defendants, in addition to

2   restitution in an amount to be proven at trial.

3                              **EIGHTH CLAIM FOR RELIEF**

4                                 **Breach of Contract**

5          **Against Defendant Advanced Digital Solutions International, Inc.**

6

7          92.    Plaintiffs incorporate by reference each of the allegations in the preceding

8   paragraphs of this Complaint as though fully set forth herein.

9          93.    Defendant ADSI applied for and was approved to be an authorized HPE partner

10  and member of HPE's channel sales organization. Upon doing so, ADSI was subject to the

11  material terms of the Hewlett Packard Enterprise Company U.S. Partner Agreement and its

12  various Addendums, which are set forth in Section V.D above, and required that:

13         • ADSI not modify HPE Products.   (Agreement, Paragraph 7.b.)
              "Products" is defined in the Agreement as ". . . hardware, Software,
14            Support, documentation, accessories, supplies, parts and upgrades that
              HPE authorizes you to purchase or license under this Agreement that are
15            sourced from HPE and/or HPE authorized distributor. (Agreement,
              Paragraph 1.f.) "HPE Authorized Partner" is defined as ". . . a channel
16            partner that has a valid partner agreement with HPE and/or meets HPE
              partner program or certification requirements." *Id.*
17

18         • ADSI display HPE's marks only to promote the sale of HPE Products
              (Agreement, Paragraph 8.b.) and to only display the HPE Marks in good
19            taste, and in a manner that preserves the value of the Marks (Agreement,
              Paragraph 8.c).
20

21         • ADSI abide by HPE's Partner Code of Conduct, and to conduct business
              with "strict legal compliance and with the highest ethical standards."
22            (Agreement, Paragraph 16.c.)

23         • ADSI purchase all HPE Products "only from Distributors listed on the
24            U.S. Distributor Summary Matrix on the HPE Partner Portal," and
              required ADSI to not purchase HPE products from other Partners or from
25            any unauthorized source.  (Addendum, Paragraph 1.a.)

26         94.    Defendant ADSI was an authorized HPE partner (and before that, an authorized

27  HP partner) for all material times, until HPE terminated the contract in April 2019.

28

1    95.    At all material times, Plaintiffs performed pursuant to the terms of the agreement.

2    96.    Defendant ADSI breached the agreement by selling products obtained from non-

3    authorized sources to various individuals and entities, including, but not limited to, HPE's

4    investigator.

5    97.    As a direct and proximate result of their breaches of the agreement with Plaintiffs,

6    Plaintiffs have been damaged in an amount according to proof.

7                                    **PRAYER FOR RELIEF**

8        WHEREFORE Plaintiffs respectfully pray for the following relief:

9        A.    For entry of judgment in favor of Plaintiffs and against Defendants on each of

10   Plaintiffs' claims for relief alleged in this Complaint;

11       B.    For a preliminary and permanent injunction restraining Defendants, their officers,

12   agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in

13   interest, and those persons in active concert or participation with them, from (i) further acts of

14   infringement of the trademarks at issue in this litigation, including inducing or contributing third

15   parties to infringe, (ii) further acts of conversion, and, (iii) further acts of unfair competition and/or

16   false advertising against Plaintiffs;

17       C.    For a determination that Defendants' acts of trademark infringement constitute

18   cases of willful and exceptional infringement;

19       D.    For actual damages as a result of Defendants' unlawful conduct, alleged above, as

20   well as any profits that are attributable to the alleged conduct and are not taken into account in

21   computing Plaintiffs' actual damages;

22       E.    For maximum statutory damages available under the law to the extent Plaintiffs

23   elect statutory damages for any claim for relief;

24       F.    For punitive damages to the fullest extent available under the law;

25       G.    For reasonable attorneys' fees to the fullest extent available under the law;

26       H.    For treble and/or enhanced damages to the fullest extent available under the law;

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1     I.     For full restitution, including restoration of all property unlawfully taken from

2 Plaintiffs, as well as any ill-gotten gains from the resale of Plaintiffs' property or other unjust

3 benefits received and retained by Defendants;

4     J.     For prejudgment interest and the costs of prosecuting these claims to the fullest

5 extent available under the law;

6     K.     For any additional injunctive, specific performance, and/or other provisional

7 remedies, as appropriate; and,

8     L.     For such other and further relief as the Court deems just and proper.

9

10 DATED: August 6, 2020         SIDEMAN & BANCROFT LLP

11

12 By:   /s/ *Richard J. Nelson*
                Richard J. Nelson

13                 Attorneys for Plaintiffs
                 Hewlett Packard Enterprise Company,

14                 Hewlett Packard Enterprise Development LP, and
                 Hewlett-Packard Development Company, L.P.

15

16                **JURY DEMAND**

17 Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs Hewlett Packard Enterprise

18 Company, Hewlett Packard Enterprise Development LP, and Hewlett-Packard Development

19 Company, L.P.  hereby demand a trial by a jury on all issues herein so triable.

20

21 DATED:  August 6, 2020        SIDEMAN & BANCROFT LLP

22

23 By:   /s/ *Richard J. Nelson*
                Richard J. Nelson

24                Attorneys for Plaintiffs
                Hewlett Packard Enterprise Company,

25                Hewlett Packard Enterprise Development LP, and
                Hewlett-Packard Development Company, L.P.

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711